THE STATE OF NEBRASKA, EX REL. CHARLES E. BESSEY, v. H. A. BABCOCK, AUDITOR OF PUBLIC ACCOUNTS.

State University: POWER OF REGENTS OVER FUNDS.   The regents of the university, in the absence of an appropriation by the legislature, have no power to dispose of the endowment fund or that derived from the ⅜ mill tax.   *Regents v. McConnell*, 5 Neb., 423, *State v. Liedtke*, 9 Neb., 468, adhered to.

ORIGINAL application for mandamus.

*O. P. Mason*, *S. J. Tuttle*, and *T. M. Marquett*, for relator.

*William Leese, Attorney General*, for respondent.

MAXWELL, J.

On the twenty-fifth of March, 1885, the board of regents passed the following resolution:   *Resolved*, That the sum

of two hundred and fifty dollars be and the same is hereby appropriated out of any money now in the custody of the state treasurer belonging to the regents' fund, and in the general account thereof, the same to be drawn by Prof. Bessey, dean of the industrial college, to be used in payment of work and material on a botanical garden for said college." Thereupon an order was issued by the president and secretary of the board, as follows:

"Secretary's Office,

"Lincoln, Neb., March 26, 1885.

"This is to certify that Prof. Charles E. Bessey or order is entitled to two hundred and fifty dollars for work and materials on a botanical garden for the industrial college, payable from the regents' fund, and the general account thereof, in accordance with resolution of the board of regents dated March 25th, 1885, and the state auditor is hereby directed to draw his warrant for the above amount on the regents' fund, in pursuance of an act of the legislature approved February 23d, 1875."

The order was thereupon presented to the auditor, who refused to draw a warrant, for the reason that "the legislature of Nebraska has not made an appropriation from the regents' fund on which to draw warrant for the same." The relator then brought this action to compel the auditor to draw his warrant on the regents' fund for the sum stated, upon the ground that the fund named being derived from interest from sales of university and agricultural college lands, rents received for leases of the same, and the three-eighths of one mill tax levied for the support of the University, was thereby appropriated and placed under the control of the regents, and that no further appropriation of the same was necessary. It was stated on the argument, and not denied, that the legislature had appropriated out of the "general fund" the sum of $134,000 for the support of the university for the years 1885 and 1886. And from the exhibits filed with the application, the regents'

fund now on hand, in round numbers, amounts to the sum
of $110,000; the annual income from interest and rents
of the agricultural college and university lands is nearly
$40,000, with a portion of the land still undisposed of;
while the three-eighths of one mill tax cannot bring in less
than $50,000 per annum. There would thus be placed at
the disposal of the regents for two years not less, probably,
than $420,000, which may perhaps be increased consider-
ably, that, should the writ be granted, would be placed
at the disposal of the regents for the years 1885 and
1886.

In 1869 the legislature passed an act creating the "Uni-
versity of Nebraska," and declared that, "The object of
such institution shall be to afford to the inhabitants of the
state the means of acquiring a thorough knowledge of the
various branches of literature, science, and the arts."
Comp. St., Ch. 87. This act created the board of regents,
and defined their powers. Sec. 10 of Art. 8 of the con-
stitution of 1875, also provides that, "the general govern-
ment of the university of Nebraska shall, under the direc-
tion of the legislature, be vested in a board of six regents,
to be styled the Board of Regents of the University of Ne-
braska, who shall be elected by the electors of the state at
large, and their term of office, except those chosen at the
first election as hereinafter provided, shall be six years.
Their *duties and powers* shall be prescribed by law," etc.

The question as to their power over the university funds
was before this court in *Regents v. McConnell*, 5 Neb., 423.
In that case they brought an action against McConnell to
recover the "sum of about $3,500, moneys belonging to
the regents' fund, which came into the hands of the de-
fendant as treasurer of the university, under his appoint-
ment by the regency." The opinion was written by Chief
Justice GANTT, who said (page 428): "Under the act of
1869 the university corporation had no control over or
disposition of the endowment fund, and now by the act of

February 25, 1875, the legislature has deemed it proper to abolish the office of treasurer of the university, and to make the state treasurer the custodian of the funds appropriated for the support and maintenance of the university, to be disbursed by him upon warrants drawn by the state auditor, in the same manner as funds appropriated for the support of other state institutions not incorporated are disbursed. Hence, by this latter act, the custody and control of these funds are taken from the corporation and placed in the custody of the state treasurer for disbursement, and under the settled rule of law, in respect to public corporations of this kind, the legislature had the undoubted authority to take these funds from the custody of the corporation and divest it of any corporate power over them, and having done so, we think it clear that the regents as such corporation have no authority in law to *bring or maintain this action*." The same question was again before the court in *State v. Liedtke*, 9 Neb., 468, the opinion being written by the present chief justice, and it was held in effect that without an appropriation by the legislature " no such funds or any other funds once in the state treasury can be drawn out," and because there was no appropriation from the regents' fund, the court refused to compel the auditor to draw a warrant thereon.

These decisions were rendered by an unanimous court, after full and careful consideration of the question, and are decisive of this case. The regents, therefore, in the absence of an appropriation by the legislature, have no right to appropriate any part of the regents' fund. That the legislature should make ample appropriations for the support of the university will be conceded, and that it will do so there is but little doubt. Ample appropriations have been made, so far as appears, for the support of every department of the university and agricultural college, authorized by the legislature for the years 1885 and 1886. No attempt has been made or will be made, or is threatened, to divert the

funds to any other purpose, or in any manner to defeat the object of the grant. It is well known that the bill making appropriations for the university and agricultural college provided that the money should be appropriated out of the regents' fund; but, by some means, during its passage, the provisions of the bill were changed, making the appropriation out of the general fund. As the same mistake occurred a few years ago, and it is well known to be a mistake, it shows a want of care on the part of those having the matter in charge. The alleged mistake, however, materially adds to the burdens of taxation of the people of the state, but does not in the slightest degree affect the efficiency or usefulness of the university. The regents, however, can only use such funds as are placed by the legislature under their control. It follows that the writ must be denied.

WRIT DENIED.

REESE, J., concurs.

COBB, CH. J., dissents.