CASES DETERMINED

IN THE

# SUPREME COURT OF NEBRASKA

AT

## SEPTEMBER TERM, 1906.

---

STATE, EX REL. SPENCER LENS COMPANY, RELATOR, V. EDWIN
M. SEARLE, JR., AUDITOR, RESPONDENT.

FILED SEPTEMBER 21, 1906. No. 14,872.

ORIGINAL application for a writ of mandamus to compel respondent, as auditor of public accounts, to draw a warrant in payment of an allowed claim in favor of relator. Respondent demurred. *Demurrer overruled and writ allowed.*

*Clark & Allen* and *Roscoe Pound,* for relator.

*Norris Brown, Attorney General,* and *W. T. Thompson,* contra.

PER CURIAM. Demurrer overruled. Writ allowed. Opinion to be filed later.

The following opinion was filed November 10, 1906:

Colleges and Universities: EXPENDITURES. The money donated by the United States to the university of Nebraska by an act of congress approved March 2, 1887, and acts supplemental thereto, known as the "Experimental Station" fund, may be expended by the board of regents for the purposes expressed by the donation, without other or more specific legislative appropriation than that implied by section 2, art. VIII of the constitution, and contained in section 19, ch. 87, Comp. St. 1905.

(155)

BARNES, J.

This is an application for a writ of mandamus to compel the respondent, the auditor of public accounts, to draw a warrant in payment of an item of indebtedness due from a certain fund donated to the university of Nebraska by the United States. The fund in question was created by an act of congress, known as the "Adams" bill, which is supplemental to a bill passed and approved March 2, 1887, by which the university of Nebraska receives from the treasury of the United States $15,000 annually for the purpose of carrying on experimental work in agriculture. The board of regents allowed the account and charged it against said fund. The auditor approved of the same, but declined to issue a warrant for its payment on the sole ground that the legislature had not specifically appropriated the fund in question for that purpose. So, the only question involved in this suit is whether the money received from the United States under the act of congress above mentioned can be expended by the university without a specific appropriation. The original bill, to which the Adams bill is supplemental, provides: "The sum of fifteen thousand dollars per annum is hereby appropriated to each state, to be specially provided for by congress in the appropriations from year to year, * * * out of any money in the treasury proceeding from the sales of public lands, to be paid in equal quarterly payments, * * * to the treasurer or other officer duly appointed by the governing boards of said colleges to receive the same." 24 U. S. Statutes at Large, p. 441, ch. 314. And the Adams bill contained the following directions: "The sums hereby appropriated to the states and territories for the further endowment and support of agricultural experiment stations shall be annually paid in equal quarterly payments on the first day of January, April, July, and October of each year by the secretary of the treasury, upon the warrant of the secretary of agriculture, out of the treasury of the United States, to the treasurer

or other officer duly appointed by the governing boards of said experiment stations to receive the same, and such officers shall be required to report to the secretary of agriculture on or before the first day of September of each year a detailed statement of the amount so received and of its disbursement, on schedules prescribed by the secretary of agriculture." 34 U. S. Statutes at Large, p. 63, ch. 951. Chapter 87, Comp. St., provides for the establishment of the university of Nebraska, and declares that the general government thereof shall be vested in the board of regents. By section 4 of said chapter it is provided: "The board of regents shall have full power to appoint their own presiding officer and secretary. And they shall constitute a body corporate to be known as 'the regents of the university of Nebraska,' and as such may sue and be sued, and may make and use a common seal, and alter the same at pleasure. They may acquire real and personal property for the use of the university, and may dispose of the same whenever the university can be advantaged thereby." It is further provided by section 2, art. VIII of the constitution: "All lands, money, or other property granted, or bequeathed or in any manner conveyed to this state for educational purposes, shall be used and expended in accordance with the terms of such grant, bequest, or conveyance." So, it seems clear that the board of regents not only has the power to accept the fund in question, but it is also its duty to do so and to expend it for the purposes declared by the acts of congress above mentioned.

It was stated on the hearing that from 1887 to 1899 the treasurer of the United States paid the money directly to the board of regents, who expended it without depositing it in the state treasury. During the year 1899, however, the state treasurer was made custodian of the university funds, and since that time the fund in question has been paid by the secretary of the United States treasury to the treasurer of this state in compliance with a resolution of the board of regents. It is contended by the respondent that, the fund having been paid to the state

treasurer, it cannot be expended by the board without a specific appropriation thereof by the legislature, and to sustain that contention our attention is directed to *Regents v. McConnell,* 5 Neb. 423; *State v. Liedtke,* 9 Neb. 468; *State v. Babcock,* 17 Neb. 610; *State v. Moore,* 46 Neb. 373. From an examination of those cases we find that in each of them the fund in question was money paid into the state treasury as taxes, and therefore it belonged to the state until specifically appropriated by the legislature to the use of the university, while in the case at bar the fund never belonged to the state. It was donated by the United States to the experiment station of the university for a specific purpose, and was paid to the state treasurer as the agent of the board of regents and custodian of the funds of the university. It never was, and is not now, any part of the funds of the state. The legislature of 1899, recognizing this fact, and presumably intending to put the whole matter at rest, passed a general law in which, after classifying the other funds of the university, it was provided as follows: "The agricultural experiment station fund shall consist of all moneys which may come into the possession of the state treasurer on and after July 1, 1899, accruing under an act of congress approved March 2, 1887, entitled 'An act to establish agricultural experiment stations in connection with the colleges established in the several states under the provisions of an act approved July 2, 1862, and the acts supplemental thereto'; also all moneys which may hereafter be received by virtue of any act of congress supplemental to said agricultural experiment station act and for the same purposes. The said experiment station fund is hereby appropriated to be applied exclusively to the uses and objects designated by the said act or acts of congress relating thereto, and the same shall at all times be subject to the orders of the board of regents for expenditure for said uses only." Section 19, ch. 87, Comp. St. 1905. In view of the nature of the fund in question, of section 2, art. VIII of the constitution, and the acts of the legislature above quoted, it seems clear that

in general terms the expenditure of said fund by the board of regents is clearly authorized, and no other or more specific appropriation is neccessary.

For the foregoing reasons, the demurrer to the relator's petition is overruled, and as the respondent has elected to stand on his demurrer the writ of mandamus is awarded in accordance with the prayer of the petition.

JUDGMENT ACCORDINGLY.