THE BOARD OF REGENTS OF THE UNIVERSITY OF NEBRASKA, A CORPORATION, APPELLEE AND CROSS-APPELLANT, v. J. JAMES EXON, GOVERNOR OF THE STATE OF NEBRASKA, ET AL., APPELLANTS AND CROSS-APPELLEES.

256 N. W. 2d 330

Filed July 27, 1977. No. 41145.

Paul L. Douglas, Attorney General, and Patrick T. O'Brien, for appellants.

Cline, Williams, Wright, Johnson & Oldfather, for appellee.

Bert L. Overcash of Woods, Aitken, Smith, Greer, Overcash & Spangler, for amicus curiae.

Heard before WHITE, C. J., SPENCER, BOSLAUGH, McCOWN, CLINTON, BRODKEY, and WHITE, JJ.

BOSLAUGH, J.

The Board of Regents of the University of Nebraska brought this action for a declaratory judgment to determine whether certain acts of the Legislature affecting the University were in violation of Article VII, section 10, of the Constitution of Nebraska. The defendants are the Governor, the Director of Administrative Services, and the Director of Personnel.

The University of Nebraska was established by the Legislature in 1869. Laws 1869, p. 172. That act provided the general government of the University should be vested in a Board of Regents consisting of the Governor, the Superintendent of Public Instruction, the Chancellor, and nine members appointed by the Legislature in joint session.

Article VII, section 10, of the Constitution, was adopted in 1875. It provides in part: "The general government of the University of Nebraska shall, under the direction of the Legislature, be vested in * * * the Board of Regents * * * who shall be elected * * *. Their duties and powers shall be prescribed by law; * * *." The controversy here centers around the meaning of the phrase "under the direction of the Legislature." The issue is the extent to which the Legislature may control or interfere with the discre-

tion of the Regents in the general government of the University.

It is of some significance that the Board of Regents established by the act of 1869 consisted of 12 members, 9 of whom were appointed by the Legislature. At the Constitutional Convention in 1871, while the proposal which is now section 10 of Article VII was under consideration, some of the delegates stated that the general government of the University should be placed with "persons who will be charged specifically with that business" and who were "separate and beyond all political influences." The Board of Regents as now constituted consists of members chosen directly by the people. We think it is clear that the purpose of the constitutional provision was to remove the University from the plenary control of the Legislature and establish the Board of Regents as an independent body charged with the power and responsibility to manage and operate the University as free from political influence and control as possible.

The early cases which were decided when the University was under the plenary control of the Legislature are of little value in determining the meaning of the constitutional provision. Cases such as State ex rel. Board of Regents v. Moore, 46 Neb. 373, 64 N. W. 965, in which the court based its opinion largely upon the early cases, although stating "our minds do not assent to the reasoning of the line of decisions referred to," should not be considered to be controlling here.

The trial court found generally that the phrase "under the direction of the Legislature" modified "shall be vested" rather than "government." With this finding we agree. It is the duty of the Legislature to implement the constitutional provision by enacting legislation which vests the general government of the University in the Board of Regents.

The trial court further found that the provision

that the duties and powers of the Board of Regents "shall be prescribed by law," means that the Legislature may set forth the powers and duties of the Regents. With this finding we agree but this provision must be considered with the other language of the section which requires that the general government of the University be vested in the Board of Regents. Thus, although the Legislature may add to or subtract from the powers and duties of the Regents, the general government of the University must remain vested in the Board of Regents and powers or duties that should remain in the Regents cannot be delegated to other officers or agencies.

The general appropriation bill adopted by the Legislature in 1975, as amended by L. B. 972 in 1976, and the general appropriation bill adopted in 1976, L. B. 690, contained numerous statements directing the Board of Regents or employees of the University to take certain actions. The trial court held that the statements in these bills which did not constitute an appropriation of funds were advisory only and not mandatory and that the Legislature was without authority to direct employees of the University. Although the defendants did not challenge this finding in their assignments of error, we have considered it and agree that it is correct.

The Legislature can not use an appropriation bill to usurp the powers or duties of the Board of Regents and to give directions to the employees of the University. The general government of the University must remain vested in the Board of Regents. In prescribing the powers and duties of the Regents a legislative act must not be so detailed and specific in nature as to eliminate all discretion and authority on the part of the Regents as to how a duty shall be performed.

The specific statutes which are in question in this case fall into two groups. The first relates to the funds of the University and the second relates

generally to various administrative officers or agencies.

There is no controversy concerning funds which are derived from taxation. The plaintiff concedes that the Legislature has complete control of the money which is to be appropriated to the University from the general revenue of the state. The controversy here concerns funds derived from the operation of the University or received from the federal government or private donors.

A problem in regard to the University Cash Fund arose in 1976 when the Governor made a line item veto of an appropriation from the University Cash Fund for instruction and research support. Since 1949, section 85-125, R. R. S. 1943, has contained a provision that money accruing to the University Cash Fund, which consists of money derived from the operation of the University, shall become available "when appropriated by the Legislature."

The trial court found that: "To the extent there has been a general appropriation in Section 85-131, the Legislature cannot control the use by the Board of Regents of funds generated by university activities including student fees, sale of commodities raised on university property, fees charged at the medical center and similar fees, by requiring specific annual appropriations of the same."

The defendants contend this finding is erroneous and rely upon Article III, section 22, of the Constitution, which provides, "Each Legislature shall make appropriations for the expenses of the Government * * *," and Article III, section 25, which provides, "No money shall be drawn from the treasury except in pursuance of a specific appropriation made by law."

The expenditure of the general funds of the state is under the control of the Legislature and it is the duty and responsibility of the Legislature to make the appropriations necessary for the operation of state

government. The restriction upon money to be drawn from the treasury has reference generally to funds of the state that may be used to defray the general expenses of government.

The funds of the University, which are not derived from taxation, have a different status. In State ex rel. Spencer Lens Co. v. Searle, 77 Neb. 155, 108 N. W. 1119, 109 N. W. 770, this court held that the Board of Regents could expend funds donated by the federal government to the University without a specific appropriation by the Legislature. In State ex rel. Ledwith v. Brian, 84 Neb. 30, 120 N. W. 916, this court granted mandamus to compel the State Treasurer to countersign a warrant drawn on the University temporary fund although there had been no biennial appropriation from the fund. This court said: "We can see no reason for a biennial appropriation of these funds. It was the pledged duty of the state to apply them to the use of the university and agricultural college, and the motives which prompted the makers of the constitution to hold the purse strings in the hands of the people cannot apply to the situation presented. The regents of the university under the law are the proper persons and the only persons who may expend this money, and it can be used for no other purpose.

"We are further of the opinion that, when once set apart and appropriated to the proper custodian and beneficiary, subsequent biennial appropriations are not required."

The provision in section 85-131, R. R. S. 1943, that "All money accruing to the university funds is hereby appropriated to the use of the state university," is a legislative recognition of the status of these funds. They can be expended only by the Board of Regents for the benefit of the University. They are trust funds, or have a similar status, and are not available to the Legislature for general governmental purposes. The finding of the District

Court that an annual appropriation was not required was correct.

The second group of statutes relates to a number of different subjects. The statutes involved, together with the holding of the trial court which are challenged by the appeal or cross-appeal, may be summarized as follows:

1. Gifts. L.B. 603 and L.B. 605, which were appropriation bills adopted by the Legislature at the 1975 session, contained provisions relating to gifts to be made available to the state. The bills provided that any gift or bequest of personal property in excess of $10,000 required the approval of the Governor before acceptance, and any gift or devise of real property in excess of $10,000 be approved by the Governor and the Legislature before acceptance. The trial court held these provisions were invalid as an attempt to unlawfully delegate authority vested in the Board of Regents under Article VII, section 10, of the Constitution of Nebraska.

2. Personnel. The trial court held "The Legislature may fix and determine the manner in which raises are to be given to the employees of the Board of Regents," but that the Director of Personnel had no authority in regard to employees of the University who had not been placed under the state personnel system by the Board of Regents.

3. New Facilities. Sections 81-1108.41 to 81-1108.43, R. R. S. 1943, prescribe certain requirements concerning planning, design, and construction of new facilities and the modification or repair of existing facilities. The trial court held the sections were not applicable to the Board of Regents or the University because they would result in an unlawful delegation of authority vested in the Regents by the Constitution.

4. Central Data Processing. Section 81-1117, R. R. S. 1943, relates to the Central Data Processing division within the Department of Administrative

Services.  The trial court held the section was not applicable to the Board of Regents or the University because it would result in an unlawful delegation of authority vested in the Regents by the Constitution.

5. Purchasing.  Sections 81-153 to 81-162, R. R. S. 1943, establish a centralized purchasing and disposal program for property used by the state and its agencies.  The trial court held that these sections did not apply to the Board of Regents or the University because they would result in an unlawful delegation of authority vested in the Regents by the Constitution.

We think the findings of the trial court were generally correct and the statutes referred to above are either invalid or not applicable to the Board of Regents and the University because they relate to some act or function of the general government of the University which under the Constitution is vested in the Regents and can not be delegated to some other officer or department by the Legislature.

We believe the finding by the trial court that the Legislature may fix and determine the manner in which raises are to be given to employees of the Board of Regents was erroneous.  The determination of salary schedules and the compensation to be paid to the employees of the Board of Regents is an integral part of the general government of the University.  The judgment should be modified by deleting that portion of the judgment.

The judgment as modified is affirmed.

AFFIRMED AS MODIFIED.

SPENCER, J., concurring.

I concur with the majority opinion herein, with the understanding that the opinion holds that the Legislature cannot control the use of cash funds generated by University activities, but that it can consider them in the making of appropriations.