REQUESTED BY: Ralph Lubeck, Vice-Chairman, Board of Educational Lands and Funds.
Is the income from unsold school lands subject to appropriation by the Legislature.
No.
Article VII, Section 6 of the Constitution provides in part:
 ". . . The general management of all lands set apart for educational purposes shall be vested, under the direction of the Legislature, in a board of five members to be known as the Board of Educational Lands and Funds. . . ."
Prior to 1972, the Constitution made no specific provision concerning the cost of the Board's administration or management of state school lands. Article VII, Section 9 provided that the income from all funds held by the state for educational purposes must be distributed to the schools of the state. During this time the cost of administering the school lands was appropriated by the Legislature from general tax revenue.
In 1972, Article VII, Section 9 of the Constitution was amended to provide in part as follows:
 "The following funds shall be exclusively used for the support and maintenance of the common schools in each school district in the state as the Legislature shall provide:
". . . .
 "b. The income from the unsold school lands, except that costs of administration shall be deducted from the income before it is so applied;" (Emphasis added).
It is our understanding that notwithstanding the above change in the Constitution, the Legislature has continued to budget and appropriate the cost of administering the school lands but that the money comes from school funds and the Board no longer receives any appropriation from the state general fund.
In light of this fact we call to your attention the recent decision of our Supreme Court in Board of Regents v.Exon, 199 Neb. 146, ___ N.W.2d ___. This was an action for declaratory judgment to determine whether certain acts of the Legislature affecting the University were in violation of Section 10 of Article VII of the Constitution. This section provides in part:
 "The general government of the University of Nebraska shall, under the direction of the Legislature, be vested in . . . the Board of Regents. . ."
You will notice that Sections 6 and 10 are almost identical except that Section 6 deals with the general management
of school lands and Section 10 deals with the generalgovernment of the University.
In the Regents' case the principal issue was the extent to which the Legislature may control or interfere with the discretion of the Regents in the general government of the University. Among the statutes in question were those relating to the funds of a University. There was no controversy concerning funds derived from taxation. The only controversy concerned funds derived from the operation of the University or received from the federal government or private donors, called the University Cash Fund.
Since 1949, the Legislature has provided (in section85-125) that money accruing to the University Cash Fund shall become available `when appropriated by the Legislature.' In this regard the lower court found that:
 ". . . `To the extent there has been a general appropriation in Section 85-131, the Legislature cannot control the use by the Board of Regents of funds generated by university activities including student fees, sale of commodities raised on university property, fees charged at the medical center and similar fees, by requiring specific annual appropriations of the same.'"
In support of this finding the Supreme Court discussed the status of the general funds of the state and the duties, and responsibilities of the Legislature in that regard. The court then went on to say:
 "The funds of the University, which are not derived from taxation have a different status. In State ex rel. Spencer Lens Co. v. Searle, 77 Neb. 155, 108 N.W. 1119, 109 N.W. 770, this court held that the Board of Regents could expend funds donated by the federal government to the University without a specific appropriation by the Legislature. In State ex rel. Ledwith v. Brian, 84 Neb. 30, 120 N.W. 916, this court granted mandamus to compel the State Treasurer to countersign a warrant drawn on the University temporary fund although there had been no biennial appropriation from the fund. This court said: `We can see no reason for a biennial appropriation of these funds. It was the pledged duty of the state to apply them to the use of the university and agricultural college, and the motives which prompted the makers of the constitution to hold the purse strings in the hands of the people cannot apply to the situation presented. The regents of the university under the law are the proper persons and the only persons who may expend this money, and it can be used for no other purpose.'"
 "`We are further of the opinion that, when once set apart and appropriated to the proper custodian and beneficiary, subsequent biennial appropriations are not required.'"
 "The provision in section 85-131, R.R.S. 1943, that `All money accruing to the university funds is hereby appropriated to the use of the state university,' is a legislative recognition of the status of these funds. They can be expended only by the Board of Regents for the benefit of the University. They are trust funds, or have a similar status, and are not available to the Legislature for general governmental purposes. The finding of the District Court that an annual appropriation was not required was correct."
The court also pointed out that even though Section 10 of Article VII of the Constitution provides that the Board of Regents' `duties and powers shall be prescribed by law', a statute prescribing such powers and duties `must not be so detailed and specific in nature as to eliminate all discretion and authority on the part of the Regents as to how a duty shall be performed.
After considering the decision of the Supreme Court in the Regents case, particularly in light of the fact that the Constitution contains no authority for the Legislature to prescribe the duties and powers of the Board of Educational Lands and Funds, it is our conclusion that Article VII, Section 9 of the Constitution fully and completely sets apart and appropriates the income from the unsold school lands for specific purposes and no appropriation of such income by the Legislature is necessary.