REQUESTED BY: Dear Senator Goodrich:
You have requested, in anticipation of introducing legislation, our opinion with respect to the following question:
 "Does the Scottsbluff Campus of the University have sufficient legal base when the only legislative action to authorize and create this facility was a resolution which was passed three or four sessions back? Does this campus need statutory authorization to be either created or to be legally continued?"
We have carefully reviewed the exact status of the activities of the University of Nebraska in Scottsbluff. Our understanding at the current time is that the University owns certain lands on what was once the campus of Hiram Scott College. In addition the University owns the Elliot Building on the former college campus.
The Elliot Building is utilized primarily for nonteaching activities. A number of experimental labs exist within the facility which are utilized by a variety of state and University agencies requiring lab facilities. A second portion of the building contains classroom and office facilities which are utilized on a lease basis by a number of state agencies, such as the Mexican-American Commission and other agencies. A part of the building is utilized by the University Extension Division. A portion of that use is by the State University of Nebraska which is a continuing education system established by the University of Nebraska in cooperation with several other state university systems in the immediate geographic area of our state. It is our understanding that as such, no campus exists in the Scottsbluff vicinity. No classroom activities are carried on in that locality.
Whether or not the Scottsbluff facility could be accurately described as the Scottsbluff campus under this state of facts is questionable.
The action of the Legislature to which you refer occurred during the Eighty-Third Legislature, First Session, 1973. During that session, LB 179 was introduced and passed by the Legislature, which was an act to provide for the acquisition and acceptance of properties belonging to Hiram Scott College, Scottsbluff, Nebraska by the Board of Regents of the University of Nebraska. That bill was vetoed and an override attempt failed. Subsequently a motion was passed by the Legislature in the following form.
 "Mr. Carpenter moved that we accept the gift of Hiram Scott, it being understood that such properties be free and clear of all encumberances (sic) and I further move that such properties be assigned to the Board of Regents of the University for the purpose of administration with the stipulation that unless otherwise authorized by the Legislature, no degree granting course of instruction shall be offered at such property." (Legislative Journal, page 1949.)
Clearly, assuming the state of facts outlined above exists, the present operation of the property owned by the University of Nebraska in Scottsbluff comports with the motion adopted by the Legislature, June 1, 1973.
Historically, it appears that the Legislature has generally established, by legislation, the right of the University to commence and operate campuses throughout the state. For example, see section 85-102.01, which establishes the Lincoln, Omaha and Medical Institutions as separate units. Section 85-145 et seq., relating to agricultural experiment stations; the provisions of section 85-180 and section85-181, relating to establishment of a veterinary school; and section 85-183 et seq., involving the University of Nebraska.
In particular, section 85-102.01 provides:
 "The University of Nebraska shall be composed of a chief governing administrative unit and three universities, the University of Nebraska-Lincoln, University of Nebraska at Omaha, University of Nebraska Medical Center, and such other institutions and units as may be designated by the Legislature."
In addition, section 85-106, R.R.S. 1943, provides in part:
 "The Board of Regents shall have power . . . (7) to provide, through the University Extension Division, for the holding of classes at various localities throughout the state avoiding unnecessary duplication of courses offered by other educational institutions in such localities; . . ."
And finally, section 85-133, R.R.S. 1943 grants the Board of Regents the power of eminent domain. It would appear that under the present operational procedures as we understand them, the Scottsbluff operation of the University of Nebraska would be within the authority granted generally to the University.
In Board of Regents v. Exon, 199 Neb. 146,256 N.W.2d 330 (1977), the Supreme Court found several statutory schemes relating to the University of Nebraska to be unconstitutional as an improper delegation of authority constitutionally granted to the Regents to some other entity. In this regard, the Supreme Court pointed out that:
 ". . . Thus, although the Legislature may add to or subtract from the powers and duties of the Regents, the general government of the University must remain vested in the Board of Regents and powers or duties that should remain in the Regents cannot be delegated to other officers or agencies."
Thus, under the current status of the operations of the University of Nebraska in Scottsbluff it would appear that no further legislative action is required. We of course caution that should an expansion of these activities be contemplated, the exact expansion would require some scrutiny to determine whether or not legislative authorization should be secured.