REQUESTED BY: Dear Senator Wesely:
You have asked our opinion as to the applicability of certain provisions of LB 161 to the University of Nebraska. The first provision you inquire about is the amendatory language of section 3 of the bill. This section amends section84-1317, R.R.S. 1943, by adding this language:
 "No faculty member of the University of Nebraska, the Nebraska State Colleges, or the technical community colleges shall be forced to retire before age seventy without due process, nor shall any faculty member have tenure status revoked due to age."
There are two matters we wish to call to your attention before discussing the effect of this amendment on the University. Section 84-1317 is a part of the State Employees Retirement Act. Section 84-1301, R.R.S. 1943, specifically excludes from the definition of `employee,' as used in that act, employees of the University of Nebraska, employees of the state colleges, and employees of technical community colleges. While it does not, we presume, affect the validity of the legislation, we believe a provision dealing with employees of these institutions is rather inappropriately placed in an act which does not purport to cover them.
Second, we are in considerable doubt as to the meaning of the amendment.
It forbids forced retirement before age 70 `without due process,' but does not specifically forbid forced retirement solely because of age. Due process is a constitutional concept, far too complex to be discussed at any length in this opinion. It has two general aspects, substantive and procedural. Procedural due process usually is thought of as requiring notice and hearing. You inform us that the University has a bylaw which provides for mandatory retirement of tenured employees at the age of 65.
If the amendment we are concerned with is intended simply to require procedural due process, the employee could be given notice of a hearing to determine whether he had passed the mandatory retirement age of 65. If he had, he could be retired on that basis alone. We are confident that that was not the intention of the amendment, but the vague language of `due process' leaves that interpretation open.
We now turn to the question of whether the amendment would violate Article VII, section 10 of the Nebraska Constitution, which provides that the general government of the University of Nebraska shall, under the direction of the Legislature, be vested in the Board of Regents. Our court construed that constitutional provision in Board of Regentsv. Exon, 199 Neb. 146, 256 N.W.2d 330 (1977). The court said that although the Legislature could add to or subtract from the powers and duties of the Board of Regents, the general government of the University must remain vested in the Board. In elaboration of that proposition, the court said that the Legislature was without authority to direct employees of the University, and held that the Legislature could not fix and determine the manner in which raises were given to employees of the University, saying that the determination of salary schedules and the compensation to be paid employees was an integral part of the general government of the University.
We believe the court would probably reach the same conclusion with respect to mandatory retirement and loss of tenure due to age. In light of Board of Regents v. Exon,
we believe it would be difficult to sustain the amendment in so far as it applies to the University.
You also ask whether the amendment contained in section 2 of LB 161 would apply to the University. Section 2 would amend section 48-1003, R.R.S. 1943, which now limits the prohibitions of sections 48-1001 to 48-1009 to the employment of persons between 40 and 65 years of age. The amendment would raise the upper limit to 70 years.
We will not discuss this amendment in terms of Article VII, section 10, because we are not confident that it applies.
Despite what Board of Regents v. Exon says, the Board of Regents is probably not totally insulated from the impact of general laws passed by the Legislature. When the Legislature attempts to specifically direct or control actions of the Board, the legislation is suspect. But we do not believe the court intended to say that the Board could ignore laws of general application. It is not, after all, a separate, independent sovereignty.
However, we believe there is some doubt that sections48-1001 to 48-1009 apply to the University, or to any other state agencies. State agencies and political subdivisions are not specifically included in the definition of `person' in section 48-1002. One might draw an inference that they might be included in the definition of `employer,' since political entities acting with respect to any peace officer or firefighter are excluded. It can be argued that this shows an intention to include other political entities.
However, this is a very tenuous basis for reaching such a conclusion. We believe a provision controlling state agencies and political subdivisions should be reasonably specific in that regard. We note that 29 U.S.C. § 630, a part of the federal Age Discrimination Act, specifically includes in the definition of `employer' a state or political subdivision and any agency or instrumentality of a state or political subdivision. The failure of section 48-1002 to include them makes it doubtful that the act was intended to apply to state agencies, including the University. If it does not, of course the amendment of that act by LB 161 would have no effect on the University.