REQUESTED BY: Dear Senator Dworak:
You ask whether the Legislature can constitutionally limit the use of all public funds utilized to purchase group insurance coverage by prohibiting the purchase of certain types of coverage. You have provided us with a copy of REQ 1416, since introduced at LB 891.
LB 891 in essence provides that no group insurance contract or health maintenance agreement paid for in whole or in part with public funds shall include coverage for abortions as defined in section 28-326. It additionally specifically limits its coverage to group policies and not to prohibiting insurers from offering individual public employees abortion coverage if the cost of such are borne solely by the employee.
Your question, of course, involves an interpretation ofBoard of Regents v. Exon, 199 Neb. 146, 256 N.W.2d 330
(1977). In that case the university challenged a number of acts passed by the Legislature. Those matters considered can be grouped in two general categories. The first is appropriations matters which dealt with the scope of the governmental power granted by the Constitution to the Board of Regents. The other category of matters dealt with in that case concerned actions to be taken by state employees not subject to the control or authority of the Board of Regents. As an example, certain requirements concerning planning, design, construction and modification of existing or new facilities were to be established and administered by the Department of Administrative Services. Central data processing was to be done through the state agencies as was purchasing. The court held in each instance that such statutes delegated governmental authority over the university to nonuniversity employees and thus violated the proscription of the provision of the Constitution vesting the governmental function within the Board of Regents.
Arguably, the basis upon which the court decided that case was solely the delegation to determine what discretionary action was to be taken to someone other than the Board of Regents. LB 891 does not delegate such authority to anyone. It establishes a general law effective as to all public funds. It would include local subdivisions of government as well as the university and the state. As such, no delegation question would arise under LB 891 andBoard of Regents v. Exon would not affect the operation of LB 891.
The Nebraska Supreme Court stated:
 "The trial court further found that the provision that the duties and powers of the Board of Regents `shall be prescribed by law,' means that the Legislature may set forth the powers and duties of the Regents. With this finding we agree but this provision must be considered with the other language of the section which requires that the general government of the University be vested in the Board of Regents. Thus, although the Legislature may add to or subtract from the powers and duties of the Regents, the general government of the University must remain vested in the Board of Regents and powers or duties that should remain in the Regents cannot be delegated to other officers or agencies." 199 Neb. at 148, 149.
The question then is whether or not LB 891 invades the province of the Board of Regents in exercising the general government of the university.
While the court also held that the Legislature was without authority to establish the salaries paid to employees of the university in Board of Regents v. Exon, it would seem to us that the determination of what areas may not be proper for public funding is an underlying policy decision. As long as such underlying policy decisions are adopted in such a manner that they affect the entire class in this case all governmental entities such statutes would not offend Article VII, section 10, vesting governmental power in the Board of Regents. It is thus our view that LB 891 would not violate the constitutional provision heretofore cited.