REQUESTED BY: Nebraska State Board of Educational Lands and Funds
1. Is the School Trust required to lease pickups from the Department of Administrative Services/Transportation Services Bureau when the total costs of doing so are greater than the total net costs which the School Trust would incur in purchasing those pickups and paying their costs of operation itself, with the excess, in effect, going to subsidize the overhead incurred by the Department of Administrative Services/Transportation Services Bureau in providing that `service' and the other costs of the leasing program as a whole?
2. In regard to authorizing and approving the acquisition of pickups to be assigned to and used by the Board of Educational Lands and Funds field representatives, is the judgment of the Department of Administrative Services/Transportation Service Bureau, or some other person or entity, to be substituted for the Board's judgment with respect to determining whether purchasing any particular vehicle and paying its costs of operation directly, or leasing that vehicle, is in the best business interests of the School Trust?
No.
No.
The primary issue in determining the answers to the questions presented is the effect, if any, of Neb.Rev.Stat. § 81-1015 (Supp. 1981) on the Nebraska State Board of Educational Lands and Funds.
Section 81-1015 provides that:
 Subject to the provisions of section 81-1013, the transportation services bureau shall own and hold title, in the name of the State of Nebraska, to all state-owned licensable passenger vehicles. All purchases of state-owned passenger vehicles and automotive equipment shall be made or approved by the transportation services bureau. The Director of Administrative Services shall not approve any voucher for the purchase of any passenger car unless submitted by the transportation services bureau.
In the case of Regents v. Exon, 199 Neb. 146,256 N.W.2d 330, the Nebraska Supreme Court was asked to determine the extent to which the Nebraska State Legislature could control or interfere with the Board of Regents of the University of Nebraska in the general government of the University.
As the court pointed out, the Board of Regents derives its authority from Article VII, Section 10 of the Nebraska Constitution. That article provides in part, that `The general government of the University of Nebraska shall, under the direction of the Legislature, be vested in a board of . . . regents. . . . Their duties and powers shall be prescribed by law.'
Like the Board of Regents, the Nebraska State Board of Educational Lands and Funds derives its authority from the Nebraska Constitution. As provided in Article VII, Section 6 of that Constitution, `The general management of all lands set apart for educational purposes shall be vested, under the direction of the Legislature in . . . the Board of Educational Lands and Funds.'
The controversy in the Regents case (supra) centered around the meaning of the phrase `under the direction of the Legislature.' That phrase is found in the constitutional grants of authority to the regents of the University of Nebraska and it is also found in the grant of authority to the Board of Educational Lands and Funds. Regents v.Exon, (supra), is therefore directly applicable regarding the extent to which the Legislature may control or interfere with the Board of Educational Lands and Funds. In other words, it is directly applicable to determine whether, or to what extent, § 81-1015 may be applied to that Board.
In Regents (supra), there was no controversy pertaining to funds derived from taxation. The controversy between the Board of Regents and the Legislature, as with the controversy presented here between the Board of Educational Lands and Funds and the Legislature, concerned the expenditure of funds derived from sources other than the state general fund. And, as pointed out in Regents, funds appropriated to the University by Neb.Rev.Stat. § 85-131
(Reissue 1976), are trust funds, and can be expended only
by the Board of Regents for the benefit of the University.
As with funds appropriated to the University, the Nebraska Constitution provides that public school lands and the income therefrom are held in trust for educational purposes.State ex rel. Ebke v. Board of Educational Lands andFunds, 159 Neb. 79, 65 N.W.2d 392 (1954). As the court further said in Ebke, supra, `the state as trustee of the lands and of the income therefrom is required to administer the trust estate. . .'
Insofar as government power and authority is provided by the Constitution and may be exercised with regard to trust funds under appropriate constitutional provision, that power and authority must remain vested as provided by those constitutional provisions and cannot be delegated to other officers or agencies. (Regents, supra.)
Here, the duty to be performed is the expenditure, by a trustee, of trust funds which are not derived by taxation, and which are constitutionally designated for application to a specific purpose: the benefit of Nebraska schools. Nebraska Constitution, Article VII, Sections 7, 8, and 9.
As the court said in Regents, and as equally applicable to the Board of Educational Lands and Funds as a result of identical grants of constitutional authority, `the regents of the University under the law are the proper persons and the only persons who may expend this money, and it can be used for no other purpose.' Regents v. Exon, supra at 151.
The decision to lease or purchase vehicles to be used in the administration of the trust is an `act or function' within the meaning of Regents v. Exon, which is properly regarded as belonging to the Nebraska State Board of Educational Lands and Funds under the Nebraska Constitution, and can only be exercised by that Board in the best interests of the state school trust.
Any attempt by the Legislature to delegate such constitutionally vested authority to another agency would, under the case of Regents v. Exon, be unlawful. Such conclusion is further supported by the case of State ex rel. Belkerv. Board of Educational Lands and Funds, 184 Neb. 621,171 N.W.2d 156.
Very truly yours,
PAUL L. DOUGLAS Attorney General
Frank J. Hutfless Assistant Attorney General
APPROVED:
Paul L. Douglas
Attorney General