REQUESTED BY: Senator Tom Baker, Legislative District 44
You have asked whether the Legislature has the authority to appropriate funds for the operation and administration of the Board of Educational Lands and Funds. Contact with your office for clarification reveals some desire to use the appropriation process to exert additional control over the Board, there being some concern about the Board's current operation.
To the extent you are referring to funds derived from taxation, the answer is "yes." "Each Legislature shall make appropriations for the expenses of the Government. . . ." Neb. Const. Art. III, Section 22. And "[n]o money shall be drawn from the treasury except in pursuance of a specific appropriation made by law." Neb. Const. Art. III, Section 25. The Court referred to these provisions in Board of Regents v. Exon, 199 Neb. 146,256 N.W.2d 330 (1977), stating:
 The expenditure of the general funds of the state is under the control of the Legislature and it is the duty and responsibility of the Legislature to make the appropriations necessary for the operation of state government.
Id. at 150-51, 256 N.W.2d at 333.
But the Legislature's responsibility, and hence control, over funds derived from the Board's administration of school lands is more limited, as discussed in1977-78 Rep. Att'y Gen. 379, Opinion No. 249, dated April 24, 1978, 1977-78 Rep. Att'y Gen. 372, Opinion No. 256, dated June 23, 1978, Op. Att'y Gen. No. 250 (April 7, 1982) and Op. Att'y Gen. No. 178 (January 17, 1984). Seealso Op. Att'y Gen. No. 91052 (June 5, 1991).
In the April 1978 opinion it was concluded that Article VII, Section 9, of the state constitution, a provision which directs that certain funds be used exclusively for the support and maintenance of the common schools, "fully and completely sets apart and appropriates the income from the unsold school lands for specific purposes and no appropriation of such income by the Legislature is necessary." The author also opined that the income from unsold school lands is held in trust and is not susceptible to appropriation for general governmental purposes, observing that "the Constitution contains no authority for the Legislature to prescribe the duties and powers of the Board of Educational Lands and Funds" as administrator of these trust funds.
The latter conclusion was rooted in Board of Regents of theUniversity of Nebraska v. Exon, 199 Neb. 146, 256 N.W.2d 330
(1977), a case which noted the constitutional source of the authority held by the Board of Regents, acknowledged the intent to vest that body with substantial independence from legislative control, and distinguished between funds derived from taxation and those coming from other sources like tuition or donations. The legislature has control of the former but the Board has control of the latter in its capacity as trustee, it was held. The positions of the Board of Regents and the Board of Educational Lands and Funds are obviously similar with respect to the funds over which they have oversight. Compare Neb. Const., Art. VII, Sec. 10 ("The general government of the University of Nebraska shall, under the direction of the Legislature, be vested in a board of not less than six nor more than eight regents to be designated the Board of Regents of the University of Nebraska. . . .") with Neb. Const., Art.VII, Sec. 6 ("The general management of all lands set apart for educational purposes shall be vested, under the direction of the Legislature, in a board of five members to be known as the Board of Educational Lands and Funds."). We believe the case remains a useful guide. Therein the court held that the phrase, "under the direction of the Legislature," referred to enabling legislation which vested the general governance of the University in the Board, not to directions for the governance of the University. Accordingly, the Legislature would have an obligation to enact statutes vesting the management of school lands in the Board of Educational Lands, but the responsibility for the management would then rest in the Board.
Even if one does not accept the view that Article VII, Section 9 of the Nebraska Constitution contains a self-executing appropriation to the Board, the Legislature has limited power over the purse strings when it comes to constitutionally created entities such as the Board of Educational Lands and Funds, as evidenced by the following language from the Board of Regents
case:
 The Legislature can not use an appropriation bill to usurp the powers or duties of the Board of Regents and to give directions to the employees of the University. The general government of the University must remain vested in the Board of Regents. In prescribing the powers and duties of the Regents a legislative act must not be so detailed and specific in nature as to eliminate all discretion and authority on the part of the Regents as to how a duty shall be performed.
199 Neb. at 149, 256 N.W.2d at 333.
The June 1978 opinion concluded that a bill which limited increases in the State's annual budget did not apply to trust funds held by entities such as the Board of Educational Lands and Funds.
The 1982 opinion addressed a statute which gave the Transportation Services Bureau authority over purchases of all state vehicles. The opinion concluded that this did not apply to the Board of Educational Lands and Funds, due to its trust responsibility.
The 1984 opinion involved a similar question. This office was asked whether a statute requiring pre-approval by Central Data Processing of computer upgrades applied to the Board of Educational Lands and Funds. And the answer given was the same. The legislature could not delegate the Board's constitutionally vested powers and duties by such a statute.
To summarize, we believe the Legislature does have power to make appropriations for the operation and administration of the Board of Educational Lands and Funds. But that power probably does not extend to funds derived from the administration of school lands. Further, to the extent the Legislature does have power to direct the use of funds it appropriates for the operation and administration of the Board, it may only do so in broad brush strokes. It cannot employ the appropriation process to usurp the authority constitutionally delegated to the Board.
Sincerely,
 Don Stenberg Attorney General
 Mark D. Starr Assistant Attorney General
Approved:
DON STENBERG 
Attorney General