REQUESTED BY: John Synowiecki, Senator Nebraska State Legislature
You have requested the opinion of this office regarding LB 789. This bill was introduced on January 22, 2003 with the "intent to ensure that probation officers receive equal pay raises and cost of living adjustments when other state employees with similar responsibilities receive them." Specifically, LB 789 would amend Neb. Rev. Stat. § 29-2257 to provide that "[P]robation officers shall be compensated with salaries and cost of living increases equal to the salary increases for members of the state employees' collective bargaining units." You have posed four questions concerning § 29-2257 and the proposed amendment as follows:
• LB 789 seeks to change provisions under Neb. Rev. Stat. § 29-2257. Whether current statutory language under § 29-2257, specifically "probation officers shall be compensated with salaries substantially equal to other state employees who have similar responsibilities", compels the Supreme Court, specifically Probation Administration, to afford probation officers substantially similar salaries.
• Whether the Nebraska Supreme Court can be statutorily required to provide salary and cost of living increases substantially equal to the salary increases and cost of living increases of members of the state employees' collective bargaining unit as provided for in LB 789.
• Whether the Probation Administration can be statutorily required to provide salary and cost of living increases substantially equal to the salary increases and cost of living increases of members of the state employees' collective bargaining unit as provided for in LB 789.
• Whether cost of living adjustments are already included in the interpretation of the word "salaries" as it exists in § 29-2257.
We will first address the constitutional issues presented by questions 2 and 3. As you have indicated in your request letter, the fact that the probation officers are employees of the judicial branch requires us to examine the separation of powers doctrine.[1] The principle of separation of powers is embodied in Article II, Section 1 of the Nebraska Constitution which provides that:
 The powers of the government of this state are divided into three distinct departments, the legislative, executive and judicial, and no person or collection of persons being one of these departments, shall exercise any power properly belonging to either of the others, except as hereinafter expressly directed or permitted.
We have previously discussed the importance of this constitutional provision in a number of opinions, including Op. Att'y Gen. No. 02012. In that opinion we discussed the history and importance of the principle of separation of powers, the purpose of which "is to establish the permanent framework of our system of government and to assign to the three departments their respective powers and duties, and to establish certain fixed principles upon which our government is to be conducted." State v Philipps, 246 Neb. 610, 614, 521 N.W.2d 913, 916 (1994). We noted that our state constitution specifically prohibits the exercise of any power belonging to one sphere by either of the others and that Nebraska's separation of powers provision is more rigorous than other jurisdictions' and has been strictly construed by the Nebraska Supreme Court.
The question presented by LB 789 is whether this proposed law would unduly encroach on the duties and prerogatives of the judicial branch. We start with the proposition that the Nebraska Legislature has extensive authority. "The Nebraska Constitution is not a grant, but, rather, is a restriction on legislative power, and the Legislature may legislate upon any subject not inhibited by the Constitution." State ex rel. Stenberg v. Moore, 249 Neb. 589, 595, 544 N.W.2d 344, 349 (1996).
We must also look at the nature of judicial power. "Generally judicial power is the authority to hear and determine a controversy as to rights and upon such determination to render a judgment binding upon the disputants." Laverty v. Cochran, 132 Neb. 118, 122, 271 N.W. 354, 357
(1937). In addition to the authority to adjudicate controversies between adverse parties, the judicial branch has additional powers or duties necessary for the court to conduct the administration of justice such as regulating the practice of law or regulating matters of court procedures. A number of Nebraska cases have involved a question of whether the Legislature may regulate the practice of law. In State ex rel. Ralston V. Turner, 141 Neb. 556, 4 N.W.2d 302 (1942), the issue was whether the Court must acquiesce in the qualifications for admission to the bar prescribed by the Legislature. The Court held that the "power to admit applicants to practice law is judicial, not legislative, and invested in courts only. . . ." Id. at 568 (quoting In Re Cate, 273 P. 617). "A court has certain inherent powers within the scope of its jurisdiction that exist apart from any constitutional or statutory authority. They allow the court to take such actions reasonably necessary to administer justice efficiently, fairly, and economically and are essential to the court's existence, dignity, and functions." 20 Am.Jur.2d § 43. "Accordingly, the Legislature cannot limit the exercise of inherent judicial power, such being essential to the existence of the court and the orderly and efficient exercise of the administration of justice. Inherent judicial power exists in addition to the express grants of judicial power to each court and originates in the mandate of the Nebraska Constitution of the separation of powers between three coequal branches, or departments, of government." State v. Joubert, 248 Neb. 287,294-5, 518 N.W.2d 887, 893 (1994).
You have asked whether the Nebraska Supreme Court, or the Probation Administration which by statute is responsible to the Court, can be statutorily required to provide salary and cost of living increases[2]
substantially equal to the salary increases and cost of living increases of members of the state employees' collective bargaining units. The proposed legislative enactment must be examined to determine whether it would unduly influence or serve to control the operation of the Court in violation of the separation of powers provision.
We have previously discussed whether court employees can become members of a union and, in so doing, be represented in collective bargaining negotiations. Op. Att'y Gen. No. 00012. Based on the principle of Supreme Court supremacy and the separation of powers doctrine, we opined that it was unlikely that the Supreme Court would allow itself to be subjected to the jurisdiction of the Commission of Industrial Relations. Those doctrines, therefore, raised serious questions as to whether unionization of supreme court employees would be permissible.
In an earlier opinion of this office, we examined the constitutionality of a statutory ban on smoking in state facilities. Op. Att'y Gen. No. 94014. The question was whether the regulation of smoking, by the Legislative branch, constituted "the exercise of a power properly belonging to either the Executive or the Judicial branches within the context of buildings or facilities occupied or controlled by those respective branches of state government." We there concluded that the regulation of smoking in state buildings, facilities and vehicles did not present a separation of powers conflict as "[T]he regulation of smoking, even in those facilities controlled or occupied by the Executive and Judicial branches would not appear to prevent the affected branch from accomplishing its constitutionally assigned functions, nor would such regulation encroach on the duties and prerogatives of the Executive or Judicial branches."
We are unable to determine with certainty how the Nebraska Supreme Court would rule as to the constitutionality of LB 789, but the mandating of certain salary increases for employees in the Judicial branch could well be viewed as the Legislature unduly controlling the management and administration of the judicial branch through legislation relating to compensation. In our view, the more specific or detailed the legislative enactment and the less flexibility or discretion afforded the Court and probation administrator in determining salaries, the more likely the statute would be found to violate Article II, Section 1. The Nebraska Supreme Court has dealt with a similar question in Board of Regents of University of Nebraska v. Exon, 199 Neb. 146, 256 N.W.2d 330 (1977). While this case did not concern the judicial branch, it did concern an independent body, the Board of Regents, created by our state constitution. The Court held that the Legislature encroached on the authority of the Board of Regents in attempting to determine the manner in which raises were to be given to its employees. "The determination of salary schedules and the compensation to be paid to the employees of the Board of Regents is an integral part of the general government of the University." Id. at 152, 256 N.W.2d at 335. Based upon the authorities discussed above, we conclude that the separation of powers doctrine raises serious questions whether the language of LB 789 would be permissible.
Returning to your first question, you ask whether the current statutory language of § 29-2257 compels the Supreme Court, and specifically the Probation Administration, to afford probation officers salaries substantially equal to other state employees who have similar responsibilities. The statute, on its face, does purport to require the Supreme Court (and Probation Administration) to pay probation officers substantially similar salaries. Reading the first question in the content of your opinion request letter, it appears that you are inquiring whether the current statute is constitutionally suspect. We must respectfully decline to answer. Our long-standing policy is that we will not issue legal opinions to state legislators concerning the constitutionality of existing statutes. Op. Att'y Gen. No. 157 (December 24, 1985). That policy is based, in part, upon the practical consideration that we may be called upon to defend the constitutionality of existing laws.
Your fourth question is whether cost of living adjustments are already included in the interpretation of the word "salaries" as it exists in § 29-2257. As previously discussed in footnote 2, state employees do not currently receive automatic cost of living increases as that term is generally defined. In any event, the term salary is a general one meaning "fixed compensation paid regularly for services". Webster's New Collegiate Dictionary (1979). In our view it would not necessarily include the cost of living increases which you propose.
Sincerely,
 JON BRUNING Attorney General
 Lynn A. Melson Assistant Attorney General
APPROVED:
____________________________ Attorney General pc: Patrick O'Donnell, Clerk of the Legislature
[1] Neb. Rev. Stat. § 29-2249 creates the Office of Probation Administration within the judicial branch, which office is directly responsible to the Supreme Court. The probation administrator, appointed by the Supreme Court, hires probation officers and employees for each probation district. Neb. Rev. Stat. §§ 29-2251, 29-2253(2).
[2] We note that, as defined in Black's Law Dictionary 312 (5th ed. 1979), a cost of living clause is a provision "giving an automatic wage or benefit increase tied in some way to cost of living rises in the economy. Cost of living is usually measured by the Consumer Price Index (CPI)." To our knowledge, state employees included in collective bargaining units do not receive automatic increases of this nature. You may be referring to a step pay plan that has afforded increases for certain state employees on January 1 of the past few years.