MARCIA CATANIA, APPELLEE, v. THE UNIVERSITY OF
NEBRASKA, A CORPORATE GOVERNMENTAL BODY,
APPELLANT.

282 N. W. 2d 27

Filed August 7, 1979. No. 42248.

John R. Douglas of Cassem, Tierney, Adams, Gotch & Douglas, for appellant.

Martin A. Cannon of Matthews & Cannon, P.C., for appellee.

Heard before BOSLAUGH, McCOWN, BRODKEY, and HASTINGS, JJ., and FAHRNBRUCH, District Judge.

HASTINGS, J.

This is an action brought by the plaintiff for personal injuries resulting from the alleged negligence of the defendant, The University of Nebraska, a corporate governmental body, more accurately described as the Board of Regents of the University of Nebraska. Plaintiff was a student at the University and suffered injury and permanent disability when struck in the right eye by a plastic practice golf ball during a physical education class session held on the

Lincoln campus. The case was tried before a judge of the District Court for Douglas County, and resulted in a judgment in favor of the plaintiff in the amount of $60,000. The University has appealed, setting forth as errors improper venue, failure of the evidence to support the judgment, and excessive damages.

In her original petition filed on March 21, 1977, plaintiff alleged the facts of the accident as briefly outlined above, after claiming the action was brought pursuant to the Political Subdivisions Tort Claims Act, section 23-2401 et seq., R. R. S. 1943, and that she had filed a claim with the secretary of the Board of Regents more than 6 months prior to the filing of the petition. The University filed an answer generally admitting the allegations of the petition except negligence on its part. Thereafter, the plaintiff apparently had second thoughts about having followed the proper procedure, so she filed a claim with the secretary of the State Claims Board under the provisions of the Tort Claims Act, section 81-8,209 et seq., R. R. S. 1943. The University then filed a motion to dismiss the petition as premature and for improper venue, which was overruled. An amended answer, repeating the objections of the motion and denials of the first answer, was filed on October 11, 1977. Finally, on March 29, 1978, plaintiff filed an amended petition setting forth the filing of claims with the secretary of the Board of Regents on July 27, 1976, and with the State Claims Board on July 12, 1977, neither of which was acted upon. For its answer to the amended petition the University again denied the claim on its merits, but also objected to the jurisdiction of the court because the action should have been filed in Lancaster County. In the final analysis, plaintiff was attempting to proceed simultaneously under both the Political Subdivisions Tort Claims Act and the Tort Claims Act, so it is necessary to examine each of them in some detail.

The Political Subdivisions Tort Claims Act declares that no political subdivision of the State of Nebraska shall be liable for any torts and no suit may be maintained except to the extent provided by that act. Section 23-2402, R. R. S. 1943, requires that a political subdivision shall include "villages, cities of all classes, counties, school districts, public power districts, and all other units of local government." Claims "shall be filed with the clerk, secretary, or other official * * * of the political subdivision, * * *." § 23-2404, R. R. S. 1943. "No suit shall be permitted" until after final disposition of the claim by the governing body or the expiration of 6 months after filing. § 23-2405, R. R. S. 1943. "Jurisdiction, venue, procedure, and rights of appeal * * * shall be determined in the same manner as if the suits involved private individuals, * * *." § 23-2406, R. R. S. 1943. This would indicate that venue would be governed by the general venue statute as applied to suits against residents, section 25-409, R. R. S. 1943, which permits a suit to "be brought in the county where the * * * plaintiff resides and the defendant * * * may be summoned." In this case, the plaintiff was a resident of Douglas County and apparently, there being no objection or showing to the contrary, the University was properly summoned. In addition, that statute provides: "[W]hen an action has been commenced in a county other than as specified herein, the court in which the action has been commenced shall have jurisdiction over such action, but upon timely motion by a defendant the court shall transfer the action to the proper court in the county in which the action should or might have been commenced as herein provided."

On the other hand, the Tort Claims Act, section 81-8,209 et seq., R. R. S. 1943, prohibits suits against the state or any state agency except as provided in that act. Section 81-8,210, R. R. S. 1943, requires that a state agency shall "include all departments, agen-

cies, boards, bureaus, and commissions of the State of Nebraska, and corporations whose primary function is to act as, and while acting as, instrumentalities or agencies of the State of Nebraska * * *." Claims under that act must be filed with the State Claims Board and no suit may be brought until final disposition or the expiration of 6 months after the claim is made. § 81-8,213, R. R. S. 1943. Suits shall be brought in the District Court of the county where the act or omission complained of occurred. § 81-8,214, R. R. S. 1943.

From a reading of the foregoing two acts, it becomes readily apparent that it is essential in this case to decide whether the University is a political subdivision or a state agency. Article VII, section 10, Constitution of Nebraska, provides: "The general government of the University of Nebraska shall, *under the direction of the Legislature*, be vested in a board * * * to be designated the Board of Regents of the University of Nebraska, * * *." (Emphasis supplied.) The implementing legislation, section 85-105, R. R. S. 1943, provides: "The Board of Regents shall have full power to appoint its own presiding officer and secretary. It shall constitute a body corporate, to be known as the Board of Regents of the University of Nebraska, and as such may sue and be sued, and may make and use a common seal and alter the same at pleasure." The University shares similar statutory language with the various cities and villages, counties, airport authorities, drainage districts, and the like. However, the common thread weaving the fabric of the latter together, which is absent in the University, is fixed geographic boundaries and the authority to levy taxes. "* * * political subdivision * * * contemplates geographical area and boundaries, public elections, * * * taxing power and a general purpose or benefit." Bolen v. Board of Firemen, Etc., 308 S. W. 2d 904 (Tex. Civ. App., 1957). The University is state-

wide in its service, has no geographical limitations in the boundary sense of the word, and has no power to levy taxes. It is completely dependent, initially at least, on the appropriations made by the Legislature, as are all state agencies.

Additionally, state agencies are thought of as the alter egos of the state itself, viz., "departments, agencies, boards, bureaus, and commissions of the State of Nebraska, and corporations whose primary function is to act as, and while acting as, instrumentalities or agencies of the State of Nebraska * * *." § 81-8,210, R. R. S. 1943. It is obvious from the constitutional provisions that the general government of the University shall be under the direction of the Legislature to provide means for the higher education of all the citizens of the entire state.

While the court, in Board of Regents of University of Nebraska v. Dawes, 370 F. Supp. 1190 (D. Neb., 1974), initially refers to "[t]he plaintiff, a political subdivision of Nebraska," it appears from the discussion that this was simply a rather loose use of language, and that it considered the Regents a state agency as the term is applied in the current matter. The Regents were seeking a declaratory judgment as to whether salaries of women employees violated the Fair Labor Standards Act, and the defendants counterclaimed for unpaid wages and liquidated damages. The Regents asserted the counterclaim was barred by the Eleventh Amendment of the United States Constitution. The court held that the Regents do not consent to a waiver of immunity from suit by counterclaim when they file a declaratory judgment action. "The Ford Motor Co. case makes it clear that officers of a state cannot waive a state's immunity unless the state by constitution or statute has waived or given an official authority to waive immunity from suit in a federal court, and the issue of whether such authority has been given is a matter of state law." The application of the Elev-

enth Amendment to the Regents makes it clear that the court regarded the Regents as a state agency for purposes of shield of the Eleventh Amendment.

Board of Regents v. Exon, 199 Neb. 146, 256 N. W. 2d 330 (1977), made it clear that "although the Legislature may add to or subtract from the powers and duties of the Regents, the general government of the University must remain vested in the Board of Regents and powers or duties that should remain in the Regents cannot be delegated to other officers or *agencies.*" (Emphasis supplied.) However, we agreed "that the Legislature has complete control of the money which is to be *appropriated to the University from the general revenue of the state.*" (Emphasis supplied.) Generally speaking, state agencies receive all or a major portion of their budgetary needs by legislative appropriations from the general revenue whereas political subdivisions fulfill most, if not all, of their financial requirements by direct tax levy within their respective boundaries.

Stadler v. Curtis Gas, Inc., 182 Neb. 6, 151 N. W. 2d 915 (1967), although not determinative of this point, certainly gives comfort to the position of finding the University to be a state agency. "The Board of Regents contends that it is an agency of the state and as such is immune from liability. * * * Although there is some conflict in the authorities, this court has recognized the doctrine that the state and its agencies may engage in proprietary activites and thereby incur liabilities from which they would otherwise be immune." In his dissent, White, C. J., stated: "It cannot be questioned that the Board of Regents is a direct agency of the state and is cloaked with the same immunity."

The state of Idaho has a statute dealing with county and municipal indebtedness which enumerates "county, city, town, township, board of education, or school district, or other subdivision of the state" much the same as Nebraska's Political Subdivisions

Tort Claims Act. In analyzing why the regents of the university were not governed by this section of the constitution, the court noted: "Had it been intended by the framers of the Constitution to place the same limitations and restrictions on 'the Regents of the University of Idaho' as a corporation that were placed on counties, cities, towns, and other municipal corporations by sec. 3, art. 8, they would have undoubtedly incorporated in this section * * * the name of the Regents of the University, and placed the Board of Regents among the inhibited classes specified.

"There is another reason why it is evident to us that it was not intended for this section (3 of art. 8) to include the Regents of the University, and that is: The Regents have not and never had any taxing power; they could not levy or collect taxes of any kind and were not and are not representatives of any municipality, territory, subdivision, or taxing unit of the state in any respect. They are merely the managers and corporate representative of an educational institution which is dependent wholly on state and federal appropriations and donations for its finances and operating expenses. The Regents so recognized by the Constitution as a corporate entity were acting and were intended to act as an instrumentality of the state for the purpose of advancing the education of the youth of the state." State v. State Board of Education, 56 Idaho 210, 52 P. 2d 141 (1935).

There is authority to the contrary, notably Gordenstein v. University of Delaware, 381 F. Supp. 718 (D. Del., 1974), but considering our own statutes and constitutional provisions as well as our own case law, we believe and hold that the Board of Regents of the University of Nebraska is an agency of the state. Therefore, this claim should have been brought under the provisions of section 81-8,209 et seq., R. R. S. 1943, and the suit filed in the District Court for Lancaster County, Nebraska.

However, plaintiff argues that section 25-409, R. R. S. 1943, deals not with jurisdiction but with venue, and, with the 1971 amendment, the statute now reads that even if the action is brought in the wrong county, the court shall have jurisdiction and only shall transfer the action to the proper county on timely application. One of the obvious fallacies in this reasoning is that the above-cited statute is a general venue statute which does apply to actions brought under section 23-2401 et seq., R. R. S. 1943, but an action against the state or state agency is governed by section 81-8,214, R. R. S. 1943, only. As stated in Stewart v. Carr, 218 So. 2d 525 (Fla. Dist. Ct. App., 1969): "This venue statute controls all actions brought under the common law or under statutes not containing a specific provision respecting venue. * * * But it is not necessarily all-inclusive as to venue. Such statute, prescribing venue generally as aforesaid, may be limited by other statutes providing civil relief under varying circumstances. * * * Thus if a suit is brought under a specific State statute and that statute provides its own individual venue, then such specifically prescribed venue governs." The requirements of section 81-8,214, R. R. S. 1943, prescribe the venue for suits brought under the state Tort Claims Act without modification or liberalization occasioned by the general venue statute.

It is also contended by the plaintiff that the University had waived venue by filing answers to both the petition and amended petition. It is true that in O'Hara v. Davis, 109 Neb. 615, 192 N. W. 215 (1923), we said: "The right to defend in the particular district is not a matter of jurisdiction, but of venue only, and the privilege may be waived." However, it is not necessary to become embroiled in the quagmire of confusion created by the original filing under the wrong statute and the University's general appearance followed by the second petition and an

objection by answer rather than special appearance. Without section 81-8,209, R. R. S. 1943, and Article V, section 22, Constitution of Nebraska, which permitted its passage, there is no question but what the University, engaged in strictly a governmental function rather than one of a proprietary nature, would have been immune from liability here. The general rule is stated in 82 C. J. S., Statutes, § 391, p. 936: "Statutes in derogation of sovereignty should be strictly construed in favor of the state, so that its sovereignty may be upheld and not narrowed or destroyed, and should not be permitted to divest the state or its government of any of its prerogatives, rights, or remedies, unless the intention of the legislature to effect this object is clearly expressed." The Supreme Court of Iowa cited this same quotation with approval in Montandon v. Hargrave Construction Co., 256 Iowa 1297, 130 N. W. 2d 659 (1964). To the same effect see 62 A. L. R. 2d 1235 and cases cited therein: "It is generally recognized that consent statutes must be strictly construed against the person seeking to subject the highway department to suit or liability and that they will not be extended beyond their express terms."

Although this court apparently has never been called upon to pass directly on the question of construction of a statute in derogation of sovereignty, as early as 1878 in The State v. Stout, 7 Neb. 89, we held that a statute which provided that the several District Courts of the state should have jurisdiction to hear claims filed against the state, which claims had previously been presented to the auditor of public accounts, must be followed, and where suit was filed directly in the District Court, it had no jurisdiction over the subject matter. Following the precedent of Stout, this court in The State v. Lancaster County Bank, 8 Neb. 218 (1879), said: "The claims upon which this suit is brought have not been presented to the auditor for adjustment. The case, therefore,

comes within the rule laid down in The State v. Stout, 7 Neb. 89, and no action can be maintained thereon. The judgment *derives no additional force from the assent of the attorney general.*" (Emphasis supplied.)

In McNeel v. State, 120 Neb. 674, 234 N. W. 786 (1931), plaintiff filed suit for breach of contract, bringing the action in the District Court for Lincoln County pursuant to a resolution adopted by the house of representatives of the Nebraska Legislature. Upon judgment, the State appealed, arguing that plaintiff's only remedy was an appeal from a decision of the auditor of public accounts to the District Court for Lancaster County. Plaintiff relied on a statute containing the following language: " 'When the legislature permits a suit to be brought against the state * * * [t]he several district courts of the judicial districts of the state * * * shall have jurisdiction to hear and determine * * * [a]ll claims against the state filed therein which have previously been presented to the auditor of public accounts, and have been * * * disallowed.' * * * Comp. St. 1929, sec. 27-319." However, this court went on to say: "The latter or 'second' clause quoted must be considered with what precedes it and with the following constitutional and statutory provisions: 'The state may sue and be sued, and the legislature shall provide by law in what manner and in what courts suits shall be brought.' Const. art. V, sec. 22. 'The legislature shall provide by law that all claims upon the treasury shall be examined and adjusted by the auditor and approved by the secretary of state, before any warrant for the amount allowed shall be drawn. Provided, that a party aggrieved by the decision of the auditor and secretary of state may appeal to the district court.' Const. art. VIII, sec. 9. 'The state may be sued in the district court of the county wherein the capital is situate, in any matter founded upon or growing out of a contract, expressed or im-

plied, originally authorized or subsequently ratified by the legislature, or founded upon any law of the state.' Comp. St. 1929, sec. 27-324. * * * Where the statutes provide an exclusive remedy against the state and a particular forum for judicial trial, one branch of the legislature alone cannot extend jurisdiction to another forum. * * * The *state's immunity* from suit in the district court for Lincoln county *was not waived by the appearance of the attorney general therein.* * * * The conclusion is that the action is based on contract and that the district court for Lincoln county did not have jurisdiction to entertain or determine the cause." (Emphasis supplied.)

In final answer to the claim that the University waived objections to venue, and for that matter, subject matter jurisdiction, perhaps paraphrasing McNeel will be helpful. "The state's immunity from suit in the district court for * * * [Douglas] county was not waived by the appearance of the * * * [attorneys for the University]. * * * The conclusion is that the action is * * * [permitted in derogation of sovereign immunity as provided by statute, which requires that it be filed in the District Court of the county where the accident occurred], and that the district court for * * * [Douglas] county did not have jurisdiction to entertain or determine the cause."

In order to sue the State of Nebraska or one of its agencies under the Tort Claims Act, the requirements of the act must be followed strictly and the petition filed in the District Court for the county in which the alleged wrongful act or omission took place. In the absence of specific legislative authority, neither the state nor one of its agencies may waive those jurisdictional requirements.

It is fundamental that want of jurisdiction of the subject matter of the action is a defect which requires the court to proceed by dismissal of the case

or other suitable action. Lippincott v. Wolski, 147 Neb. 930, 25 N. W. 2d 747 (1947). The trial court should have sustained the University's motion to dismiss.

Accordingly, the judgment of the trial court is reversed and the cause remanded with directions to vacate the judgment in favor of the plaintiff and to dismiss the action without prejudice.

REVERSED AND REMANDED
WITH DIRECTIONS.