423 N.W.2d 771 (1988)
228 Neb. 636
Dennis ROGGASCH and Eleanor Roggasch, Husband and Wife, Parents, Natural Guardians, and Next Friends of Ronald Roggasch, a Minor Child, Appellants,
v.
REGION IV OFFICE OF DEVELOPMENTAL DISABILITIES, also known as Mental Retardation Region IV, Appellee.
Dennis ROGGASCH and Eleanor Roggasch, Husband and Wife, Appellants,
v.
REGION IV OFFICE OF DEVELOPMENTAL DISABILITIES, also known as Mental Retardation Region IV, Appellee.
Nos. 86-712, 86-713.
Supreme Court of Nebraska.
May 27, 1988.
*772 David A. Domina of Domina, Gerrard & Copple, P.C., Norfolk, for appellants.
Jewell, Gatz, Collins & Dreier, Norfolk, for appellee.
HASTINGS, C.J., and BOSLAUGH, WHITE, CAPORALE, SHANAHAN, GRANT, and FAHRNBRUCH, JJ.
HASTINGS, Chief Justice.
In these two cases, the parents of Ronald Roggasch seek recovery on their own behalf as parents and on behalf of their minor son for his injuries allegedly caused by the negligence of employees of Region IV Office of Developmental Disabilities (Region IV), while he was under their care. The district court sustained demurrers of Region IV and dismissed the plaintiffs' amended petitions when they declined to plead further. The cases were consolidated for briefing and argument in this court. We affirm.
Plaintiffs' petitions alleged that the defendant was a mental health region created, pursuant to Neb.Rev.Stat. § 71-5002(6)(d) (Reissue 1981), to provide comprehensive community mental health *773 services and facilities. They further alleged that defendant is governed by a governing body provided by contract. Summonses were served on a person stated by the plaintiffs to be the managing agent. Nowhere in the petitions and amended petitions do the plaintiffs allege compliance with either the State Tort Claims Act, Neb. Rev.Stat. §§ 81-8,209 et seq. (Reissue 1987), or the Political Subdivisions Tort Claims Act, Neb.Rev.Stat. §§ 23-2401 et seq. (Reissue 1983 & Cum.Supp.1984). It was on this basis that the trial court sustained the demurrers.
As provided in Neb.Rev.Stat. § 25-806 (Reissue 1985), a defendant may demur to a petition when it appears on its face that the court has no jurisdiction of the subject of the action, there is a defect in parties, or the petition does not state facts sufficient to constitute a cause of action. Defendant's demurrers in these instances were based on the latter two reasons. Therefore, the central issue in these cases is whether the petitions on their face show such defects.
In other words, is Region IV a private entity or, instead, is it a state agency or a political subdivision, and does such information appear on the face of the petitions? The only facts in our possession are found in an exhibit attached to each of the amended petitions.
According to that exhibit, Region IV was established by written agreement dated June 10, 1974, and signed by Dakota, Dixon, Wayne, and Madison Counties. We know from the Interlocal Cooperation Act, Neb.Rev.Stat. §§ 23-2201 et seq. (Reissue 1983), that the purpose of the act was to
permit local governmental units to make the most efficient use of their powers by enabling them to cooperate with other localities on a basis of mutual advantage and thereby to provide services and facilities in a manner and pursuant to forms of governmental organization that will accord best with geographic, economic, population and other factors influencing the needs and development of local communities. § 23-2201. In § 23-2203, the term "public agency" is defined to mean any "county, city, village ... or any other municipal corporation or political subdivision of this state...."
Neb.Rev.Stat. § 83-1,141 (Reissue 1987) provides, among other things:
(1) It is hereby declared to be the public policy of the State of Nebraska that a pattern of facilities, programs, and services should be available to meet the needs of each person with mental retardation so that a person with mental retardation may have access to facilities, programs, and services best suited to such person throughout his or her life.
Neb.Rev.Stat. § 83-1,142 (Reissue 1987) provides:
(1) To carry out the policies and purposes of section 83-1,141, the director of the office of mental retardation shall provide a comprehensive and integrated statewide plan for facilities, programs, and services for persons with mental retardation....
....
(3) Any public agency defined by section 23-2203 may enter into agreements and compacts to form cooperative undertakings or separate legal entities under the Interlocal Cooperation Act for the purpose of entering into agreements on a regional basis with the director for providing facilities, programs, and services for persons with mental retardation. Each public agency having taxing authority may levy and collect taxes within its geographical unit in an amount not to exceed one and seven-tenths cents on each one hundred dollars on the actual valuation of all taxable property except intangible property for the purpose of funding programs within sections 83-1,-141 to 83-1,146.
Additional money needed for the funding of such programs may be obtained from taxes levied and collected under the general fund levy of any public agency having taxing authority.
It is provided by Neb.Rev.Stat. § 83-1,143.01 (Reissue 1981) that each region shall prepare a proposed budget which *774 shall be reviewed by the Department of Public Institutions and sent to the Director of Administrative Services, with the final budget for each mental retardation region to be set by the Legislature.
The office of mental retardation shall provide funds on a matching basis for community-based programs on the basis of $3 for each dollar available in the community. Neb.Rev.Stat. § 83-1,143.03 (Reissue 1987).
Finally, the Legislature has created six mental retardation regions in the state, with Region IV to consist of the counties of Cherry, Keya Paha, Boyd, Brown, Rock, Holt, Knox, Cedar, Dixon, Antelope, Pierce, Wayne, Dakota, Thurston, Madison, Stanton, Cuming, Burt, Boone, Platte, Colfax, and Nance. Neb.Rev.Stat. § 83-1,143.06 (Reissue 1987).
Although neither the statutes relating to mental retardation nor the Interlocal Cooperation Act seem to provide for the method of governing Region IV, the organizational agreement which is attached to and incorporated into the amended petitions as exhibit 1 appears to track the provisions of Neb.Rev.Stat. § 71-5004 (Reissue 1986), which provides in part that "[a]ny combination of counties operating under the provisions of the Interlocal Cooperation Act [with regard to mental health and alcoholism services] shall appoint a governing board which shall govern and supervise the operation of the comprehensive community mental health services program...." Exhibit 1, the formal "Agreement for the Formation of the Region IV Office of Developmental Disabilities under the Interlocal Cooperation Act," provides that "REGION IV shall be operated and maintained by the COUNTIES named herein" and that "the government of REGION IV shall be vested in the COUNTIES and their board of commissioners or supervisors appointed to serve on the Governing Board of REGION IV."
Based on the foregoing facts and inferences to be drawn from the applicable statutes, it is necessary for us to determine whether Region IV was performing its services as a part of private or state action. The fact of substantial funding by the state is not necessarily determinative of the issue. The important consideration is the rather obvious fact that Region IV acted as an arm of the counties involved, which are creatures of the state. It was organized under authority granted by state statute for the purpose of carrying out, in part, the responsibilities of the office of mental retardation of the Department of Public Institutions.
McVarish v. Mid-Nebraska Com. Mental Health Center, 696 F.2d 69 (8th Cir. 1982), involved the question of whether the action of a community mental health center established under the Nebraska Comprehensive Community Mental Health Services Act and the Interlocal Cooperation Act constituted state action. The court stated:
We have here, then, a governing board appointed by governmental units specifically for the purpose of allowing the participating governments to supervise and allocate resources efficiently. Moreover, the statute requires that the governing board consist of "one member from each of the county board of supervisors or county commissioners as represented by the Interlocal Cooperation Act." ... Where the government is so closely involved in supervising a given activity, state action exists.
696 F.2d at 71. We believe this to be a well-reasoned statement of the law and adopt it as the deciding factor in determining this case.
Having determined that the defendant in this case is a public agency, it becomes apparent that Region IV must be either a political subdivision or a state agency. In either event, compliance with the Political Subdivisions Tort Claims Act or the State Tort Claims Act is necessary in order for the plaintiffs to state a cause of action. Section 23-2401 (Reissue 1983) provides in part that "no suit shall be maintained against such political subdivision on any tort claim except to the extent, and only to the extent, provided by this act." Similarly, § 81-8,209 states in part that "no suit shall be maintained against the state or any state agency on any tort claim except to the extent, and only to the extent, provided by this act." See, Catania v. The University of Nebraska, 204 Neb. 304, 282 N.W.2d 27 (1979), overruled on other *775 grounds Blitzkie v. State, 228 Neb. 409, 422 N.W.2d 773 (1988); Parriott v. Drainage Dist. No. 6 of Peru, 226 Neb. 123, 410 N.W.2d 97 (1987).
While Region IV has many of the characteristics found in political subdivisions such as those declared in Catania and Parriott, e.g., clearly defined geographical boundaries, a statement of general purpose or benefit, and the lack of a contractual relationship with other political subdivisions, it is also lacking essential attributes which call into question its existence as a political subdivision. Unlike political subdivisions, Region IV has no independent authority to levy taxes. It instead must rely on the counties' contributions, as well as funds from other sources, and is funded for the most part by matching statewide funds.
Region IV also lacks public elections. Tied in with this is Region IV's lack of autonomous operation. Although endowed with a governing board, this board is actually a panel of participating county representatives. Moreover, Region IV is under the direction of the office of mental retardation and, at least in budgeting matters, the state Legislature. Region IV, therefore, cannot be considered a political subdivision to the extent that compliance with the Political Subdivisions Tort Claims Act is necessary to maintain a suit against the region.
Region IV clearly operates as an arm of the counties and as a facilitator to carry out the public policy of the State of Nebraska to provide programs and services for the mentally retarded, which primary responsibility rests with the state Department of Public Institutions. As such, it is a state agency, and the plaintiffs must comply with the terms of the State Tort Claims Act. Catania, supra.
The judgments of the district court in sustaining the demurrers and dismissing the petitions were correct and are affirmed.
AFFIRMED.