REQUESTED BY: Senator Vickie D. McDonald Nebraska State Legislature Senator DiAnna R. Schimek Nebraska State Legislature
LR 16 CA; Application Of Art. II, § 1 Of The NebraskaConstitution To Employees Of A Political Subdivision
Legislative Resolution 16 CA would add the language underlined below to the first paragraph of art. IV, § 1 of the Nebraska Constitution:
 The executive officers of the state shall be the Governor, Lieutenant Governor, Secretary of State, Auditor of Public Accounts, State Treasurer, Attorney General, and the heads of such other executive departments as set forth herein or as may be established by law. The Legislature may provide for the placing of the above named officers as heads over such departments of government as it may by law establish. An employee of a political subdivision of the state who is not holding elective office shall not be considered an executive officer or a member of the executive branch for purposes of this section.
In your opinion request letter, you state that:
 The intent of LR 16 CA is to clarify that the Nebraska Supreme Court's decision in State of Neb. Ex rel. Spire v. Conway, 238 Neb. 766, 472 N.W.2d 403 (1991), does not apply to employees of political subdivisions. LR 16 CA is not intended to reverse, alter or amend the holding of Conway as it applies to employees of state colleges.
In addition, the Introducer's Statement of Intent for LR 16 CA states as follows:
 LR 16 CA is intended to clarify that employees of political subdivisions of the State are not and will not be considered as executive officers of the State.
 * * * LR 16 CA is intended to clarify that employees of the political subdivisions of the State who are not holding elective office are not to be deemed to be members of the Executive Branch. Therefore, they are eligible to serve in the Legislative Branch as duly elected or appointed members of the Unicameral.
Introducer's Statement of Intent on LR 16 CA, 98th Neb. Leg., 1st Sess. 1 (January 29, 2003). You have now posed a number of questions to us involving LR 16 CA. We will first briefly discuss the Conway decision, and then provide responses to each of your various questions.
 The Conway Decision
In State of Nebraska ex rel. Spire v. Conway, 238 Neb. 766,472 N.W.2d 403 (1991), the Nebraska Supreme Court held that state Senator Gerald Conway could not both serve in the Legislature and also act as an assistant professor at Wayne State College. The court indicated that such dual service violated art. II, § 1 of the Nebraska Constitution, since Senator Conway was an officer in the Legislative Branch of government, and also an employee within the Executive Branch of government through his employment at Wayne State.(1) In the course of the Conway opinion, the court set out the following rule which governs the application of art. II, § 1 to the activities of government officials in Nebraska:
 . . . article II prohibits one who exercises the power of one branch — that is, an officer in the broader sense of the word — from being a member — that is, either an officer or employee — of another branch.
Id. at 782, 472 N.W.2d at 412
1. "Does the Nebraska Constitution prevent employees of political subdivisions from serving in the Nebraska Legislature?"
As you noted in your opinion request, we have previously declined to offer an opinion on the application of art. II, § 1 to officers and employees of local governmental subdivisions, based upon the fact that the Conway case involved state officers, and also based upon the lack of Nebraska cases dealing with that issue. Op. Att'y Gen. No. 95073 (September 19, 1995); Op. Att'y Gen. No. 92022 (February 18, 1992). However, we have now conducted further research, and we have found some Nebraska cases which, although not directly on point, have some relevance to art. II, § 1 and its potential effect on political subdivisions.
In Howard v. City of Lincoln, 243 Neb. 5, 497 N.W.2d 53 (1993), the court considered the constitutionality of an ordinance promulgated by the City of Lincoln which required landowners in the city to cut and clear "all weeds and worthless vegetation." The plaintiff claimed that the ordinance in question violated art. II, § 1. The court discussed his claim as follows:
 Howard next argues that the ordinance violates the Nebraska Constitution because it is the result of an improper delegation of authority from the Legislature and because it allows the City to improperly delegate certain powers to its departments. Again we disagree.
We first note that Neb. Const. art. II, § 1, which distributes state governmental powers to the legislative, judicial, and executive branches, does not apply to the governing bodies of municipalities. We thus concern ourselves only with Howard's argument that the Legislature inappropriately delegated nonlegislative powers to the City.
Id. at 10, 497 N.W.2d at 57. (Citations omitted) (Emphasis added). The court in Howard cited to State ex rel. Baughn v. Ure, 91 Neb. 31,135 N.W. 224 (1912) for the proposition that art. II, § 1 does not apply to the governing bodies of municipalities.
The Ure case, in turn, involved a statute which allowed cities of a certain size to adopt a "Commission Plan of City Government" upon an affirmative vote of the citizens in the community. The court stated:
 Relator's next contention is that the act in question violated section 1, art. 2 of the Constitution, providing for the distribution of powers for the government of the state into legislative, executive and judicial. He argues that since the provisions of the law do not become effective with reference to cities of over 5,000 inhabitants, except on an affirmative vote of the electors thereof, the act is an attempt on the part of the Legislature to delegate legislative powers to a municipality; . . . . The provision of the Constitution referred to by its express terms is concerned only with the government of the state, and does not limit the Legislature as to its power to prescribe the manner in which municipalities or local subdivisions of the state may administer their local affairs.
Id. at 37, 38, 135 N.W. at 226, 227. (Emphasis added).
Finally, in State ex rel. Thompson v. Neble, 82 Neb. 267, 117 N.W. 723
(1908), the court considered the constitutionality of a city charter provision which required district judges to appoint park commissioners. In that case, the court stated:
 It is contended that the separation of powers of government into the three departments, as provided for in the Constitution, relates to state government alone, and is not applicable to municipal or other local bodies whose governments are created, and whose offices are established by the Legislature, and a number of cases are cited in support of the contention. This is undoubtedly true in theory and in many cases in practice, and such is the real purpose of the state constitution. But there is no limitation, aside from that imposed by federal law or Constitution, upon the power of the people to include in that instrument provisions which may control the lesser divisions and subdivisions of the state, as in our present Constitution. Any of such provisions may be incorporated into the fundamental law, and, when this is done, they are as binding upon the courts and the Legislature as any other portion of the Constitution. The provision above quoted [art. II, § 1] extends to all courts from that of justice of the peace and police judge to the Supreme Court, and applies to all judicial officers, as well as courts.
Id. at 280, 281, 117 N.W. at 728. (Emphasis added). In Neble, the court held that the provision in the city charter which required district judges to appoint city park commissioners was void in violation of art. II, § 1.
The language noted in the three cases discussed above could be used as a basis to argue that art. II, § 1 does not apply to political subdivisions, and that employees of those subdivisions could serve in the Legislature without any problems under the separation of powers provision. However, portions of the Conway decision and additional Nebraska cases could be used as the basis for a contrary argument.
In Conway, the court drew a distinction between the institutional aspect of art. II, § 1 and its personnel or individual aspect. The court stated:
 . . . The language of article II prohibits one branch of government from encroaching on the duties and prerogatives of the others or from improperly delegating its own duties and prerogatives. This is its institutional aspect, which serves as the beam from which our system of checks and balances is suspended.
Article II also prohibits certain persons from serving two branches of government concurrently. This is its personnel, or individual, aspect. This aspect serves as a check against concentration of power, and guards against conflicts of interest which arise when one serves two masters. It has been said that, "[t]he maintenance of a strict prohibition upon dual membership of the legislative and executive branches has no doubt been the most significant aspect of the doctrine [of separation of powers] in forming the special character of American government . . . ." The aspect with which we are presently concerned [in Conway] is this second, personnel aspect of the distribution of powers clause.
Conway, 238 Neb. at 773, 774, 472 N.W.2d at 408. (Citations omitted). Interestingly, the court indicated in Conway that, "[t]his is the first time we have been asked to determine the scope of the dual services prohibition." Id. at 774, 472 N.W.2d at 408.
As a result, based upon Conway, the propriety of a particular situation under art. II, § 1 must be tested under both its institutional and its personnel or individual aspects. In connection with the personnel or individual aspects of government service, other Nebraska cases seem to indicate that local governmental officials can be placed within a branch of government.
In Searle v. Yensen, 118 Neb. 835, 226 N.W. 464 (1929), the Nebraska Supreme Court stated:
 The power of the Legislature to delegate a part of its legislative functions to municipal corporations or other governmental subdivisions, boards, commissions, and tribunals, to be exercised within their respective jurisdictions, cannot be denied; but the recipient of such powers must be members of the same governmental department as that of the grantor. Otherwise a confusion and duplication of powers would result, against which the section of the Constitution quoted above [art. II, § 1] is directed. The Legislature may not impose upon the judiciary or the executive the performance of acts or duties not properly belonging to those departments respectively.
Id. at 842, 226 N.W. 466. (Emphasis added). Accord Nebraska Mid-State Reclamation District v. Hall County, 152 Neb. 410, 41 N.W.2d 397 (1950). Similarly, the court has indicated that members of boards of education in cities and towns are ministerial and executive officers. State v. Buttner, 180 Neb. 529, 143 N.W.2d 907 (1966); State v. Loechner,65 Neb. 814, 91 N.W. 874 (1902). And, having a county attorney act as a coroner does not constitute the imposition of judicial duties upon an executive officer under art. II, § 1, because the coroner's duties are not judicial. State ex rel. Crosby v. Moorhead, 100 Neb. 298,159 N.W. 412 (1916). Finally, along with stating that art. II, § 1 does not apply to local governmental bodies, the Neble case, cited above, also indicates that art. II, § 1 applies to all judges, including local justices of the peace and police judges.
It seems to us, based upon the lengthy discussion above, that it would be possible to argue that while the institutional aspect of art. II, § 1 does not apply to local political subdivisions, the personnel or individual aspect of that constitutional provision does. Indeed, such a notion finds support in certain language in the Conway case which discusses exceptions from the application of art. II, § 1:
An exception to institutional application of the separation of powers doctrine does not imply an exception to the dual personnel ban. While it may be necessary for certain agencies to share attributes with the executive, legislative, and judicial branches in order for those agencies to carry out the function assigned to them in the Constitution, those needs do not require the agency to employ personnel who exercise power in another governmental branch.
Conway, 238 Neb. at 785, 472 N.W.2d at 414. Consequently, we believe that there is at least an argument that a member of the Legislature, who is clearly an officer of the Legislative Branch of government, may not concurrently act as an officer or employee in another branch of government in a political subdivision.(2)
On the other hand, the Nebraska Supreme Court has not squarely faced this issue, in our view, and it is possible that the court could simply rely on the formulation of the rule set out in the first three cases cited above, and hold that art. II, § 1 does not apply to local political subdivisions. Given that uncertainty, we must again conclude that the answer to your first question is unclear at this time. Whether art. II, § 1 of the Nebraska Constitution as it is presently drafted prevents employees of political subdivisions from serving in the Nebraska Legislature is a question which will have to await further decisions by our courts.
While we understand that your first question was posed to us in connection with art. II, § 1 of the Nebraska Constitution, we would note, given the breadth of that question, that teachers, who are employees of school districts which are political subdivisions, also have a potential problem with service in the Legislature under art. III, § 9 of the Nebraska Constitution for the reasons set out in our Op. Att'y Gen. No. 95073 (September 19, 1995). That is, there is case law in Nebraska which indicates that teachers are public officers under certain circumstances. If teachers are public officers, then service as a state legislator and as a teacher would be proscribed under art. III, § 9 which states that "[n]o person holding office under the authority of the United States, or any lucrative office under the authority of this state, shall be eligible to, or have a seat in the Legislature."
2. "Are political subdivisions considered to be a part of the Executive Branch?"
We assume that this question is posed to us in the context of art. II, § 1 of the Nebraska Constitution. With that in mind, we cannot offer any definitive answer to this question for the same reasons discussed in our response to your initial question. At this point, it cannot be determined with certainty to what extent, if at all, all aspects of art. II, § 1 of the Nebraska Constitution apply to local political subdivisions and whether such subdivisions are part of the Executive Branch under existing law.
3. "Is the University of Nebraska a political subdivision of the State?"
Two Nebraska cases have a bearing on this question. First of all, in Catania v. The University of Nebraska, 204 Neb. 304, 282 N.W.2d 27
(1979), the Nebraska Supreme Court considered the question of whether the University was a political subdivision which must be sued under the Political Subdivisions Tort Claims Act, or a state agency which must be sued under the State Tort Claims Act. Ultimately, the court concluded that "the University of Nebraska is an agency of the state" which must be sued under the state Act. Id. at 311, 282 N.W.2d at 32. Similarly, in the Conway case, the court stated:
 While the Board of Regents is an "independent body charged with the power and responsibility to manage and operate the University," it is, nevertheless, an administrative or executive agency of the state. As the regents are part of the executive branch, so, too, are the [state college] trustees.
Conway, 238 Neb. at 786, 472 N.W.2d at 415. (Citations omitted). Consequently, we do not believe that the University of Nebraska is a political subdivision of the State.
4. "Is a public power district a political subdivision of the State?"
Neb. Rev. Stat. § 70-602 (1996) provides, in pertinent part:
 A [public power district] may be created as hereinafter provided and, when so created, shall be a public corporation and political subdivision of this state and may sue or be sued in its corporate name.
(Emphasis added). Apart from § 70-602, a number of Nebraska cases have indicated that various public power districts are political subdivisions. Johnson Lakes Development, Inc. v. Central Nebraska Public Power Irrigation District, 254 Neb. 418, 576 N.W.2d 806 (1998); Southern Nebraska Rural Public Power District v. Nebraska Elec. Generation and Transmission Co-op, Inc., 249 Neb. 913, 546 N.W.2d 315
(1996); Omaha Public Power District v. Nebraska Dept. of Revenue,248 Neb. 518, 537 N.W.2d 312 (1995). Therefore, we believe that the answer to your fourth question is "Yes."
5. "Is the phrase `political subdivision' as used in LR 16 CA, page 1, lines 14-15, adequate for purposes of this measure?"
This office does not normally make determinations as to what is adequate for particular legislative purposes, since that is a task more appropriately left to the Legislature and to the individual senators with an interest in a particular bill or resolution. However, we will note that the provisions of the Nebraska Constitution must be taken in their ordinary and common acceptance in such a manner as to express the intent of the Constitution's framers. American Federation of State, County and Municipal Employees, AFL-CIO v. Dept. of Public Institutions State Hospitals, 195 Neb. 253, 237 N.W.2d 841 (1976). In that regard, the Nebraska Supreme Court has indicated that a political subdivision is "a body which contemplates geographical area and boundaries, public elections, taxing power, and a general purpose of benefit." Parriott v. Drainage Dist. # 6 of Peru, 226 Neb. 123, 125, 410 N.W.2d 97, 99 (1987). We assume the Parriott definition or a similar one would be used in connection with LR 16 CA. If that is not appropriate for your purposes, you may wish to add some definitional language in the legislative resolution.
6. "Is an employee of a political subdivision who does not hold elective office in the political subdivision eligible to serve in the Legislature and retain his or her employment with the political subdivision under the current Nebraska Constitution? If LR 16 CA were passed by the voters?"
It seems to us that your first question here is essentially the same as the first question in your opinion request discussed above. In both cases, you wish to know if an employee in a political subdivision can concurrently serve in the Nebraska Legislature under our present Constitution. As a result, our answer to your first question here is the same as our previous answer to your question number 1. However, by way of additional specific response to this question, we would add that nothing clearly precludes concurrent service in the Legislature and employment by a political subdivision at this time, given the uncertainties which we have described regarding the application of art. II, § 1 in the context of governmental subdivisions.
Your second question in this area goes to the effect of the language proposed by LR 16 CA. You wish to know if that proposed language would allow concurrent service in the Legislature and employment by a political subdivision, or in essence, if LR 16 CA would cure any potential problems with such concurrent service under art. II, § 1.
If LR 16 CA were passed by the voters, the following language would be added to art. IV, § 1 of the Nebraska Constitution, which discusses the executive officers of the state:
An employee of a political subdivision of the state who is not holding elective office shall not be considered an executive officer or a member of the executive branch for purposes of this section.
At first review, the proposed language in LR 16 CA would appear to allow employees of political subdivisions to serve in the Legislature. If that language were added to the constitution, then employees of political subdivisions would not be considered to be "members" of the Executive Branch, and on that basis, could serve in the Legislature without running afoul of art. II, § 1.(3)
However, LR 16 CA also states that employees of political subdivisions would not be considered as members of the Executive Branch "for purposes of this section." That latter language could be viewed as limiting the operation of LR 16 CA to art. IV, § 1 of the Nebraska Constitution, which might bring into question the applicability of that legislative resolution to art. II, § 1. That is particularly true since, in Conway, the court indicated that there are only three branches of government, and application of LR 16 CA to art. II, § 1 could be seen, given the nature of the three branches, as taking employees of political subdivisions out of all three. As a result, we believe that there is some question as to whether LR 16 CA would allow an employee of a political subdivision who does not hold elective office in that subdivision to serve in the Legislature, and still retain his or her employment with the political subdivision under art. II, § 1.
7. "It's been suggested that LR 16 CA amends the wrong article of the Nebraska Constitution. Would our intent be better served if an amendment to Neb. Const. art. III, sec 8. or 9 with specific language on who may or may not serve in the Legislature were adopted?"
Again, we generally believe that the task of determining what best serves the intent of particular legislation is a task which should be left to the Legislature. However, we would note that adoption of LR 16 CA pertaining to the Executive Branch would not cure any potential problems with teachers serving in the Legislature under the provisions of art. III, § 9 of the Nebraska Constitution as discussed in our Op. Att'y Gen. No. 95073 (September 19, 1995). In addition, you may wish to consider amending art. II, § 1 directly to allow employees of political subdivisions to serve in the Legislature in light of our discussion regarding the second portion of your question number 6 above.
Sincerely yours,
 JON BRUNING Attorney General
 Dale A. Comer Assistant Attorney General
Approved by:
___________________________ Attorney General
pc: Patrick O'Donnell Clerk of the Legislature